### AMERICAN LOCOMOTIVE CO. v. DICKSON MFG. CO.

(Circuit Court, N. D. New York. September 9, 1902.)

1. FOREIGN CORPORATIONS—SERVICE OF SUMMONS.

A Pennsylvania corporation whose plant and principal place of business were in that state also maintained an office in New York while engaged in active business. It sold its plant and business and gave up its New York office, but the business of settling up its affairs was principally conducted thereafter at the office of a banking firm in New York, of which its president and vice president were members, and where its bank account was kept. Held, that service of summons in an action against the corporation in New York, made on such officers at their New York office, was valid, under Code Civ. Proc. N. Y. § 432.

On motion by defendant to set aside service of summons made in the supreme court of the state of New York, pursuant to section 432 of the New York Code, the defendant having removed the action to this court.

Julius P. Workum, for plaintiff.
George Coggill, for defendant.

COXE, Circuit Judge. The plaintiff is a New York corporation and the defendant is a Pennsylvania corporation. This action was commenced April 15, 1902, to recover $8,754, alleged to have been overpaid to the defendant under a certain contract entered into between the parties in June, 1901, by the terms of which the defendant sold its manufacturing plant and business to the plaintiff.

¶ 1. Service of process on foreign corporations, see note to Eldred v. Palace-Car Co., 45 C. C. A. 3.

This contract was negotiated and signed in New York and payments were made there to the defendant. Prior to the sale of its business to the plaintiff the defendant's manufactory and principal office was at Scranton, Pa., but it maintained a New York office at No. 40 Wall street, until sometime in July, 1901. After the sale the business of settling up the affairs of the defendant was largely conducted in the city of New York by the secretary and treasurer, Mr. Cox, who is a member of the firm of Winthrop & Co., bankers, at No. 40 Wall street, where the defendant's bank account was kept. The president of the defendant, during the time in controversy, had an office in New York, as did its vice president, who was also a member of the firm of Winthrop & Co. In short, it is clearly established that the principal business of the defendant, after it went into liquidation, was transacted in the city of New York. It was, of course, unnecessary for the defendant to maintain an office in New York. After it ceased to do an active business its office at No. 40 Wall street was, therefore, given up and its headquarters were transferred to the office of Winthrop & Co., in the same building. There it kept its funds, there its officers were to be found, there it received its correspondence and there it transacted the important part of what little business remained. There can be no pretense that the defendant has not had ample notice of the plaintiff's cause of action. When the suit was commenced the defendant was engaged in active business nowhere. What business it did transact, incident to closing up its affairs, was done, principally, in the city of New York. Service of the summons upon one of defendant's local agents at Scranton would probably have resulted in the forwarding of the papers to one of the defendant's officers in New York. To the extent of this delay, at least, it would have been less effectual and less satisfactory to the defendant than the notice which was actually given. It is thought that the service is valid within the authority of Lumber Co. v. Doyle, 38 C. C. A. 34, 97 Fed. 22, and cases cited.

The motion is denied.